Thank you, Your Honor. May it please the Court, Counsel. I'm Steve Fehwiger. I'm here on behalf of the appellant, Theresa Wagner. After a five-day jury trial and three days of jury deliberation, the jury was hopelessly deadlocked in this case. They had sent notes back at 11 a.m. and then later on, shortly after 4 p.m. on the third day of deliberation, stating that they couldn't reach an agreement on anything and stating that they wanted direction from the Court. The Court received the note at 11 stating, We are unable to come to a unanimous verdict for either the plaintiff, Theresa Wagner, nor the defendant, Carolyn Jones. At 3.24, I requested a mistrial after having had the jury given an Allen charge at about 1.11 p.m. that day because this jury had been deliberating now for three days without any indication of a verdict on either Count 1, the 1983 political discrimination claim, or on the equal protection claim. At 4, Mr. Carroll and I had a conference with Judge Pratt to find out what the defendant's position was on that issue and he indicated that he would have to talk to Ms. Jones to find out if they agreed to a mistrial. Then, shortly thereafter, Magistrate Judge Tom Shields called me and read me this note. We are unable to come to a unanimous verdict. I do not see us ever agreeing with that language in emboldened. One juror has a conflict and needs to leave at 4.30 today and another juror with a sick child may not be able to attend on Thursday. Please advise us where we go from here. The judge told me I'm going to declare a mistrial. The record shows he declared a mistrial. The record shows that he thanked the jury in indicating that this is a difficult decision. Sometimes people can't come to agreements on issues and then he excused them and discharged the jury. Counsel, is there any case law or statutory law or rules that determine conclusively at what point a jury is discharged? There is no bright line statutory rule on this. We've cited numerous cases from across the country which seem to adopt the bright line test that discharge constitutes the completion of the jury's service. We've seen some of the cases. I've read some of the cases in the briefing. You have the closest analogous cases to this where a judge announces something similar to discharge or an actual discharge and jurors begin to depart the courthouse or in some phase of departing or call back and they kind of analyze the . . . You've got to look at what is the integrity of the jury process here. Did the jury leave the courtroom? Yes, but we don't know where. Counsel, which footnote is it in Judge Pratt's . . . Footnote 16. Thank you very much. Page 18 of . . . Even though I didn't finish my question, I think you gave the right answer. You get the same amount of points whether you . . . Page 18 of his decision. Thank you. Judge Pratt goes through and recites what he believes are facts of what happened with Judge Shields and a bailiff. Now, he says in that footnote he's not going to consider the information in the footnote, but then later he does, right? Absolutely. That's what's incorrect in this . . . I guess it's his disclaimer. He can take back his disclaimer. But do you believe that footnote 16 is accurate? No, I don't know if it's accurate. No, excuse . . . So you're saying you don't know. I'm sitting in my office getting a telephone call telling me there's going to be a mistrial. Then, 30 minutes later, I'm getting a telephone call from Judge Shields telling me they entered a verdict on count one. Was there a factual record made of where the various jurors were when they were called back? No. Was there any record made as to if and to what degree any of the jurors discussed either among themselves or with other persons the case? No. Now, your no's to Judge Smith are misleading, I think. Because footnote 16 says, Judge Shields walked to the jury room and, finding all jurors still present, asked them to return to the courtroom. That is him saying he found them in the jury room, counsel. Judge Shields didn't ever file an affidavit . . . No, I'm not talking about an affidavit. I'm talking about what's here. That's in footnote 16. Yeah. Footnote 16 is not found on the record. Footnote 16 never was . . . Now, counsel, the record is what was in the district court. This is part of the record. Read Federal Rule of Appellate Procedure 10. But, let's not go there. Let's talk about reality. Don't you think that here, Judge Pratt is saying . . . I know he says he's not going to go by it. I got you on that. But, he says he found them all in the jury room. Well, maybe he did. But, I don't know that because Judge Shields never filed anything with the court . . . to verify what he's putting in footnote 16. This record is . . . in terms of facts . . . as to what happened in the jury deliberation . . . is devoid of anything. We don't know if they were in the jury room . . . versus in the hallway . . . versus one of them was in the bathroom. Counsel, during the rest of the trial . . . was there somebody in the clerk's office . . . that moved the jury from the courtroom to the jury room? Oh, yeah. They always have a bailiff. Okay. So, at least, we have to surmise that there was somebody . . . that person was with them. Well, I would assume so, Your Honor. But, you don't know that at this stage. No. And, we don't . . . We don't know if any reporters dashed around to stand . . . Was there a hallway? Or, I mean, did you go directly from the courtroom to the jury room? Or, how did that work? We don't know. I mean, that's the problem. We are sitting . . . Mr. Carroll is on the way home to Des Moines. Judge Pratt is in Des Moines. I'm sitting in my office in Moline, Illinois. And, we don't know what happened . . . after he discharged the jury. So, no one representing you was anywhere near the courtroom at that time? Not at all. Huh. Not even informed that he was going to go inquire of the jury . . . whether they reached a verdict on him. So, are you asking us to invalidate this process? Or, would you be satisfied for a remand for those fact findings? No, I'm asking that you invalidate the process . . . based on the case authority that we cite. I think the Alabama case that we cite . . . the TDM case . . . Well, Counsel, most of those cases . . . I'm interrupting you. Most of those cases have clear factual findings. This case, I get your point, doesn't. Shouldn't we have a remand and let's see if Judge Pratt and Judge Shields . . . really stand by footnote 16? Well, you could, Your Honor. But, again, if you look at the cases I'm citing . . . they say that . . . once you give us a . . . give us a test. Give us a bright line. Give us an area in which . . . the litigants know when their trial is over . . . and that a decision is made or not made. Here, what you're allowing now . . . is the judge to inquire . . . when he had no knowledge . . . that there was a verdict on either count. Doesn't the party have a Sixth Amendment right . . . to be present . . . in the courtroom . . . I believe in . . . is queried about their deliberations or anything else? I agree. I don't know if it extends to civil cases, Your Honor. You have a Sixth Amendment right to a jury in a civil case, don't you? Correct. And, a few more rights under the Fifth Amendment . . . and the Sixth Amendment in a criminal case. But, I'm talking about in a civil case. So, you had . . . at least by rule . . . Footnote 16's information . . . you had a resumption of the trial. And, the defendant wasn't there. And, the plaintiff wasn't there. And, the plaintiff wasn't there. And, the lawyers weren't there. And, you had the judge querying . . . this group of people who had . . . had three or four days of talking about this case. Correct. And, you didn't give us any Sixth Amendment cases or anything like that. I didn't. No. I concentrated more on this whole . . . Counsel, there's an issue of waiver because many places . . . I only know Missouri practice . . . but, you have a local lawyer sit with the jury . . . when you leave town or have to go to another case. You have some local . . . usually it's an associate . . . sit there with the judge and you hear a lot of stories. That's true. So, there is a . . . I've been in that position. Yes. So, there is a waiver issue here, too. Well, Judge, I don't know how we can waive when we weren't ever given the opportunity to waive. Judge Pratt made the decision to go back to Des Moines and let Judge Shields take the verdict. He never instructed us that you would need to be present in the courtroom. And, I assume the court excused you to go back to your office during deliberations. Oh, yes. And, you agreed that they could take the verdict without you being present? Well, no. I didn't agree to that. Implicitly, did you? Implicitly, I probably did. But, expressively . . . I mean, that's the way you usually do it. And, on a civil case, the bailiff calls you up and tells you what happened. But . . . But, I'm being told that this is a mistrial. And, I'm being told . . . They don't call you up and tell you, we called the jury back in and talked to them. Right. And, this is what happened. And, what that means is he's inquiring as to their deliberative process. And, that's improper under 602B. Had you been present, would you have objected? Yeah. I would have objected. In fact, that's what happens a lot in the cases that we cite. One party will object to the court continuing to inquire into what the jurors are doing. And, ultimately, the appellate courts generally say, that's a proper objection. Because, you're getting into the deliberative process at that point. You didn't even have a signed verdict form at this stage. The judge directed the signature on the verdict form rather than have it set aside. But, he pulled the jury before he had them do that. Sure. But, he pulled the jury before he declared the mistrial. And, they told him that they couldn't reach a unanimous verdict on anything. So, now you've got inconsistent verdicts. You have inconsistent polling of the jury in this situation. Because, beforehand, all 12 of them said that they couldn't reach an agreement on anything. So, here we're sitting with two different verdicts now on count one. I would also like to point out that Judge Pratt did err in his jury instructions in this case. And, failed to follow this court's ruling in the Wagner v. Jones original decision from 2011. Because, he didn't instruct on the motivating factor analysis. And, I've set that forth in my brief. But, I'm running out of time. But, I would like the court to look at the marshalling instruction on the law, which is the political discrimination one. And, what I had requested, consistent with Mount Healy and with the Wagner v. Jones decision. Also, the same decision instruction, I had requested the language from this court to be added into the instruction. And, Judge Pratt would not grant that. And then, he gave a business judgment rule instruction, which was redundant at best. And, shouldn't have been given at all. Because, Carolyn Jones was not the employer. The University of Iowa is the employer. She's the state actor. And, she got the benefit of the same decision instruction. And now, she's getting the second bite of the apple with the business judgment rule. As I read the record, there was a whole group of people that made this decision. She was simply the mouthpiece. Is that right? Well, that's what they want you to believe. Our theory was she could overrule them. But, regardless, they took the position that she had to just validate what the Faculty Appointments Committee and faculty as a whole did. So, to give the business judgment rule instruction in that, contrary to their theory, is improper in this situation. And, we believe that the failure to follow the law in that situation requires a new trial also. Did you point out Gagnon versus Sprint? A case we had about kind of like this, but it was in a business setting. But, this was sort of a business setting too, to the judge. No, I did not. Okay. Thank you, Mr. Feewer. Mr. Carroll. Good morning. My name is George Carroll. I work for the Iowa Attorney General's Office. And, I represent all of the named defendants in this case, both Carolyn Jones in her individual capacity and Dean Gail Agrawal, the current dean of the law school, in her official capacity. Really, one of the big issues is this verdict. And, the question before this court is, is the mistake of the presiding judge, in this case, Magistrate Shields, by not asking more questions about that note enough to otherwise throw out what appears to be a valid verdict on count one. And, in this case, the note was, we're unable to reach a verdict. But, he didn't poll on count ones and two at that time. He asked, is the note accurate? And, they said, yes, it is. And, what the record shows is, they got the case on October 22nd at 420. At that point, Ms. Wagner's counsel waived the right to be present unless they returned that evening, which likely would be 5 o'clock, 530, if they returned that quickly. They got it at 420. From that moment on, Ms. Wagner's counsel had waived the right to be present at any time. I, in fact, live in Des Moines, Iowa. And, I told the court I was returning to Des Moines, Iowa. And, I waived my right to be present. We got questions on the phone. And, the record shows there were numerous questions. Originally, there were questions without a court reporter present. I then asked for a court reporter. And, what we do know from the facts are, 10-23, they deliberate all day long. They have questions. 10-24, the second full day of deliberations, they submit a question about equal protection. They ask, actually, for a copy of the 14th Amendment. And, the way the verdict form was, count one was the First Amendment claim. Count two was equal protection. That's the 14th Amendment question. That day, that question was in the morning. Then, as the day wore on, it became clear that they had more questions. At 324, Mr. Feewinger emails the court and requests a mistrial. I don't see the email right away because I'm not sitting at my computer screen waiting for a pop-up. But, at 4 o'clock, we have a call with a court reporter. At that time, Magistrate Shields indicates that that is his possible intention. But, possible intention to declare a mistrial. What do I think? I said I would have to talk to my clients. I had an individual capacity client and I had a University of Iowa client. That call was at 4 p.m. I heard nothing, again, until the mistrial was declared. I had not gotten back to the court, that's true, because I hadn't spoken to the clients I needed to. You do concede there was a mistrial declared? Yes, absolutely. At 435, well, actually, the record shows the jury came in to the courtroom at 431. That's in the record. This courthouse in Davenport is as secure as this building.  That door is locked. We cannot access these doors as lawyers without the bailiff or a court attendant or a marshal taking us into that back hallway. Counselor, you're giving us a lot of facts that aren't in the district court. Well, they... I think you're testifying here. But, they are in Judge Pratt's judicial notice of where the jury went. They went from the courtroom to a secured area. Now, you mean he's footnote 16. No, he says it not even in 16. Well, you know, he says some of the same things in 16 he says in the text. He does. Yeah. And at the top of 16, he says he's not going to consider anything in this footnote in any way, in any way. I'm quoting him in conducting the analysis and deciding the issues. And then you find these things popping up in text, sort of like that, you know, thing you used to punch when you were a kid. So, do we have enough facts here to really make a decision or not? Well, I think you do because when we look at the case law, it says case by case. And what facts we do have is the mistrial was declared at 435. They went out and Judge Pratt took judicial notice of where they went. They went out the secured door. They went... Now, is that in the text of the footnote, this going... It's in the text. Oh, that's in the text. Okay. And Judge Pratt has the right to take notice of the courtroom that he presides over. But, counsel, where do we find the authority to reconstitute a jury after discharge? Well, in the cases that we cited, for Guaro out of the Third Circuit, the jury was recalled after dismissal, after dismissal, discharged, left the courtroom, and they were called back to deliberate more. In this case, this record shows two-minute gap and that they had reached a verdict on count one. Do you have any cases where, that authorized the presiding judge, this case the magistrate, to query the jury about their deliberations after they have been dismissed and left the courtroom and back? I mean, without... Did you agree not to be there while the judge questioned the jury? I mean, they sent notes out. That's a usual procedure, but they don't come out and talk to him, right? Right. I had agreed not to be present. I mean, to the extent, you know, I mean, I wasn't even aware that mistrial was happening. They were called back immediately. So there's this two-minute time period. The polling, really, it isn't inquiring into the jury's intent here. They were polled properly on, is your note accurate? Then Judge Shield realized there were two counts. And he polled them, were you able to reach a verdict? And all the questions are in the past tense and so are the answers. We were on count one, but not count two. That's just after he brought them back in. Yes. And when they said that, then he polled them. Is this your verdict? Actually, the question is, was this your verdict? Yes, it was. And all 12 said that. So regardless of note 16 in the disclaimer, the record does show there's a two-minute gap. And there are cases in our brief that talk about jurors actually being discharged and allowed to deliberate more. And that didn't happen. A lot of state cases are contrary to your position. They are. Yes. Do you think that that relates perhaps to the difference in some courthouses, some state courthouses, where there's not such security as there is in procedures as there is in federal courthouses? I don't think there's any doubt. Well, has any case said that? You and I just made it up, but has any case said that? Well, I thought you were asking about my practical experiences. Yeah. There is no doubt that the federal system secures the jurors more than any other court system. We didn't get to my real question. Has any case recognized the difference in state courts and federal courts? They're not saying our court system is different than the federal security system. They are recognizing jurors are. . . Most of the state cases have the jurors in the hallway going down the staircase. And the case cites the state cases they cite. I mean, we had a prosecutor talking to a jury after dismissal on a staircase. But we do have cases where jurors were dismissed and given further instructions and deliberated. And that is what happened here. Counsel, don't you think even at a minimum we should remand for fact findings? Well, I prefer you didn't, but I think that to the extent . . . If Pratt's findings that you can accept are not sufficient, then it becomes what is the remand? Well, let me ask you this way. Put your hand over footnote 16. Anything in it. We won't consider anything in footnote 16. And anything that 16 is in the text, too. Okay? This does away with the pop-up stuff by Judge Pratt. If you take away footnote 16 and every time anything . . . I'll have the clerk go through it and they'll find it. Are you content not to have a remand? Okay, if I put my hand over 16 . . . Yes, and every other place his stuff pops up. I think there's enough in the record that the two-minute delay is in the record. The judge took note of the jury was in a secured area, which he can take note of because this is a secured . . . Now, wait a second. That's in footnote 16, isn't it? Well, it's there, but when he takes note of where this jury was, he can say that because that is a secured area. And actually, it is . . . You're not complying with my question. I don't mean to be rude, but I'll be plain. If you take footnote 16 out and every place any of its stuff pops up, are you happy to proceed? No remand. I do think there's enough there. Okay. And then, actually, even when you look at the cases they cite, some of them say based on . . . For example, there's two Ohio cases. They're basing their dismissal discharge on Ohio law. What we don't have here is statute, a rule of civil procedure to guide us. And what we don't necessarily know is what is the standard of review? What is it you're to review Judge Pratt's ruling on? Generally speaking, on a motion for new trial denial, it's abuse of discretion. When we look at the cases, there isn't one court that says in these kind of decisions that point blank says . . . You know how sometimes you have to say it right away. We review for abuse of discretion. But when we read the cases carefully, we see more often than not, it's abuse of discretion and not de novo, which I think can go to the remand issue. Because if you adopt abuse of discretion, what discretion did Judge Pratt abuse with the known timeline? The two minutes? The past tense questions? And the fact that he could take notice and he did properly, my hand over 16, of where this jury went for two minutes. And in those cases, I think it can stand. I will also submit, when you read these cases, you get a sense of, but where is the fairness? We had a five-day trial. This came back on a remand on a summary judgment ruling. She got her trial. On how many counts? Well, it was versed on count one, but there weren't the other three counts yet. They amended their petition. Now they did. But you say you're satisfied with what's here. Well, I won't ask the question. Just to be clear then, when this came back the first time, there was only one count against Carolyn Jones. On remand, they amended their petition. And what's, I think, of interest is the claim that created the deadlock has been dismissed. They resisted it at the directed verdict motion. They resisted it at the trial court level. They briefed it on appeal, and then they dismissed the very claim. Well, because of an intervening Supreme Court case, a new Supreme Court case. Not pending appeal. That case existed clearly before Judge Pratt's ruling. With respect to some of the other issues raised, particularly with the same decision and the First Amendment instructions, those are the model instructions, and those actually do follow the roadmap from Wagner 1. With respect to, they raised the question about not being able to do proper voir dire. They actually, I believe, counsel waived his right. He said as much at the close of evidence, saying, I didn't make an objection at the time. That's reviewed under the plain air standard. With respect to the same decision, excuse me, business judgment decision, the fact of the matter is when this was remanded by the Eighth Circuit, they said a material fact dispute exists over whether the decision maker, Carolyn Jones, would have made the same decision but for Ms. Wagner's political beliefs. The court itself recognized she was the decision maker. Of course she's the decision maker. And more importantly, Dean Agrawal was a named defendant on behalf of the University of Iowa. And so it was a hiring decision that was being challenged. And all entities, of course, act through individuals. It's not like you'd say one of the cases is an AT&T case. AT&T made this decision. No, somebody made the decision. And in this case, Carolyn Jones was being challenged on her decision. In conclusion... Is this just the cat's paw of Professor Besantzen? Absolutely. She was not. She wasn't. Okay. And I think it's unfair to, I don't mean by the court, I mean by Ms. Wagner, to continue to challenge one individual who had a distinguished legal career, who simply believed in something. And that had more to do with constitutional rights than anything. And it's unfair to think that a dean of the law school is the cat's paw for one professor. But regardless, we had a trial. And Professor Besantzen was challenged. Forty-nine Democrats and one Republican on the faculty. Absolutely. And I think they have the absolute right to be whatever party affiliation they want to be. And when the selections are made, too. Was this a 12-person jury? Yes. And you were there several times when they recessed and came back in. Did they ever, in your view, did they get out and back in two minutes? Yes and no. That would be, pretty much it was 12 people. It pretty much would take them 20 seconds to get out of that courtroom, the way that was set up. But sometimes we had a very quick break, a very short thing. They were speedier than any jury I ever had when I was on trial court for five years. Well, I think somebody went down the hall and said, come back in. But I see my time's up. I would ask that the court affirm all of the decisions in this case. Thank you. Thank you, counsel. Mr. Fiewiker, your rebuttal. I find it interesting that Mr. Carroll went through the questions that the jury was raising during the course of deliberations and then told you that, well, they were hung up on count two. How do we know? How do we know? We aren't supposed to know. We lawyers would love to be in there all the time. We'd like to say, hey, why don't you think about this evidence? Why don't you think about this evidence? 602B prevents us from doing that. It prevents us from doing it after the trial, too. It prevents us from going to these jurors and saying, hey, did you really mean that? That's exactly what Judge Shields did. Did you really mean that? Did you really mean not to render a verdict on count one? That's what happened here. And that's what's wrong. And that's why it violates 602B, the rules of evidence. Because he is now trying to ascertain what the jury's deliberation was. And that is improper. And that's what the law says. I find it interesting, this whole two-minute argument. The Ruskin case that I cited from Michigan says, who cares if it's two minutes or two days? Once they leave the courtroom, they cease to exist as a jury. They aren't functioning as a jury anymore. And let me tell you, when a judge tells you to do something, you usually do it. And when a judge comes in after you've been told that your duties are over and you're discharged . . . Counsel, your time has expired. And come back in, well, you're going to do it, out of respect for the court. Thank you, Your Honor. Thank you, Counsel, for your presence in argument this morning. Consider your case submitted. We'll render a decision in due course.